14 Ill.2d 440 (1958)
152 N.E.2d 873
COUNTY BOARD OF SCHOOL TRUSTEES OF OGLE COUNTY et al., Appellees,
v.
IVAN C. ELLIOTT et al., Appellants.
No. 34753.
Supreme Court of Illinois.
Opinion filed September 18, 1958.
*441 WILLIAMS, McCARTHY AND KINLEY, of Rockford, (KARL C. WILLIAMS, and BERNARD P. REESE, JR., of counsel,) for appellants.
LARGE, RENO, ZAHM & FOLGATE, of Rockford, (ROGER RENO, of counsel,) for appellees.
Affirmed in part and reversed in part and remanded.
Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:
This is an appeal from a judgment of the circuit court of Ogle County entered in an eminent domain proceeding wherein plaintiffs, the county board of school trustees and a school district in the city of Rochelle, sought to acquire a portion of defendants' residence property for the purpose of adding to a school's playground facilities. Defendants filed a cross petition claiming damages to the remainder of the property not taken and, upon stipulation of the parties, the cause was heard by the court without a jury. After hearing evidence and viewing the property the court fixed the sum of $4,000 as compensation for the land taken, but denied the cross petition for damages to the land not taken. By this appeal defendants renew their *442 claim for damages to the land not taken, and also contend that the compensation allowed for the land taken was inadequate.
Defendants' property is located in a residential section seven blocks from the business district of Rochelle, has a frontage of 137 feet on South Main Street, and a depth of 309 feet. It is improved with a two-story Dutch colonial, frame, modern, seven-room residence which was constructed in 1924 and is presently occupied by Ivan C. Elliott and his wife, the principal defendants. A small creek flows in a southerly direction on the southeast side of the premises and forms the boundary line on that side. To the west the lot adjoins the golf course of a country club, while to the north, separated by a private driveway and a large hedge fence, is located a grade school. Plaintiff school officials seek to condemn the rear 150 feet of defendants' land and will utilize it as a playground in conjunction with the school, a use that will necessitate the removal of three large trees. As a result of the taking, defendants' property will be reduced in depth by approximately one half, it will then be abutted on two sides by school property, the residence will be 80 feet from the school playground, and the lot's contiguity with the country club will be severed.
Joseph Askvig, a real-estate broker, testified for plaintiffs that the fair cash market value for the whole tract was $20,000, while that of the part taken was $2,000. The witness gave no testimony relative to the depreciation in value of the remaining property other than to state on cross-examination that he did not think "taking the portion off the back would do too much damage to the remaining property." William F. Franzen, another real-estate broker who testified for plaintiffs, gave respective estimates of $18,650 and $3,400 for the whole and the part taken, and stated that his item of $3,400 "did not consider any damage to the remaining portion."
*443 For the defendants, real-estate broker Fred J. Hickey estimated the value of the whole property as being $25,765 and that of the property to be taken as being $5,000. He further expressed the opinion that the taking would depreciate the remaining property to a value of $13,500 and, based upon his opinion that defendants should receive $5,000 for the land taken, calculated the damage to the property not taken to be $7,625. When the court threatened to strike the latter part of the witness's testimony because there had been no itemization of the factors upon which his figure of $7,625 was based, he testified that his estimate as to depreciation of the part not taken took into consideration the following circumstances: The location and character of the property and surrounding property; sales of comparable property; the fact that the taking changed defendants' property from a "home to a house"; the fact that the frontage on country-club property was a valuable asset which would be lost to the remainder; the fact that the shrinkage of the lot would reduce the possibility of sale of the remainder; and that the taking and use by the school would have the effect of isolating defendants' property.
Vernon Smith, a banker and the trustee under a lien on the premises, valued the whole property at $25,250, the property taken at $7,500, and testified that the fair cash value of what would be left after the taking would be $14,000. Thus, on the basis of an award of $7,500 for the land taken, it was this witness's opinion that the remainder would be depreciated in value in the amount of $3,750. He pointed out that the taking would separate defendants' property from the country club; that it would "hem the house in on a small lot," that it would deprive defendants' property of the benefit of some beautiful trees, and would also cause it to be abutted by school property on two sides. In elaborating upon the element relating to *444 the severance from the country club, the witness related that residence property in the area so situated was in greater demand and sold at a higher price than the property not so situated.
Upon motion by the plaintiffs the trial court struck all testimony of defendants' witnesses relating to the depreciation of property not taken and thereafter denied the petition for damages to land not taken, but awarded $4,000 for the land taken. Defendants now claim that the court erred in both respects.
Under the rules of eminent domain followed in Illinois when a part only of one parcel of land is taken, the damages suffered by the owner with respect to each part are not treated as a unit but are kept separate, (see: Department of Public Works and Buildings v. Griffin, 305 Ill. 585, at 588; Jahr, Law of Eminent Domain, 1953, sec. 99,) and the measure of damages is the market value of the land taken, plus the difference in value of the remainder before and after the taking. (City of Chicago v. Provus, 415 Ill. 618; Department of Public Works and Buildings v. Barton, 371 Ill. 11; City of Chicago v. Lord, 276 Ill. 544; 17 I.L.P., Eminent Domain, sec. 65.) The special benefits, if any, accruing to the property, may not be set off against the land taken, but may be taken into consideration as reducing or completely offsetting any damages to the remaining part of the land. (City of Chicago v. Mecartney, 216 Ill. 377.) The burden is on the condemnor to prove the fair cash market value of the property to be taken, while the landowner has the burden of proving damages to land not taken. (Cook County v. Holland, 3 Ill.2d 36; Central Illinois Public Service Co. v. Lee, 409 Ill. 19.) Accordingly, we shall first direct our attention to defendants' contention that the amount of compensation awarded for the land taken was inadequate.
It is the settled doctrine of this jurisdiction that where a jury, or a court when the case is tried without a jury, *445 views the premises in a condemnation case and returns a verdict within the range of the evidence, such finding will not be disturbed on review unless clearly shown to have resulted from passion, prejudice or palpable mistake. (City of Chicago v. Lord, 279 Ill. 582, 591; City of Chicago v. Lord, 276 Ill. 544, 551; Department of Public Works and Buildings v. Pellini, 7 Ill.2d 367.) Plaintiffs' two witnesses testified, respectively, that the land taken was worth $2,000 and $3,400, while two witnesses for defendants gave estimates of $5,000 and $7,500. We cannot say that an award of $4,000, which approximates an average of all estimates of value, was either outside the range of the evidence or so grossly inadequate as to require a reversal. Under this point defendants attack the testimony of the witness Franzen, implying by their citation of Trustees of Schools v. Kirane, 5 Ill.2d 64, that his lack of recent local experience in property transactions rendered his testimony hearsay. Not only does an objection on such grounds come too late on review but, also, the record indicates that defendants admitted Franzen's qualifications, and that the latter examined the property and familiarized himself with local conditions before testifying. We conclude that the award was within the range of the evidence, and that defendants were adequately compensated for the land taken.
In striking the testimony of defendants' witnesses relative to damages to the land not taken, and in denying defendants' petition with respect to such land, the court indicated by his ruling and subsequent judgment order that defendants had failed to prove any direct injury to the remainder and that he considered the proof offered in such respect to be speculative and remote. It is our opinion that this ruling was improper.
The law of eminent domain contemplates that where private property is taken for a public use, the owner is entitled to the amount of money necessary to put him in as good financial condition as he was with the ownership *446 of his property at the time the petition was filed. Nothing short of that amount conforms to the constitutional requirement of just compensation. (City of Chicago v. Koff, 341 Ill. 520; City of Chicago v. Callender, 396 Ill. 371.) At the same time, however, it has been frequently stated that the constitutional provision against the damaging of private property for public use without compensation was not intended to reach every possible injury which may be occasioned by a public improvement, and this court, employing a strict view, has held that to warrant a recovery for damages to land not taken it must appear that there has been some direct physical disturbance of a right, either public or private, which a person enjoys in connection with his property, and which gives it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. The disturbance need not be a physical disturbance or direct injury of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object. Illinois Power and Light Corp. v. Talbott, 321 Ill. 538; Illinois Power and Light Corp. v. Peterson, 322 Ill. 342; Sanitary District of Rockford v. Johnson, 343 Ill. 11; Department of Public Works and Buildings v. Hubbard, 363 Ill. 99; Kane v. City of Chicago, 392 Ill. 172.
While we can agree with the court below that neither the inconvenience and feelings of the owners nor the proximity of the proposed playground are proper elements of damage to the land not taken (see: City of Winchester v. Ring, 312 Ill. 544; Schuler v. Wilson, 322 Ill. 503,) it is our opinion, under the circumstances appearing in the record, that the shrinkage of defendants' lot and its severance from the country-club property become proper elements of damage in view of the uncontroverted evidence that such results will in fact do injury to the rights defendants *447 enjoyed in connection with their ownership. With regard to the severance that will occur, a witness for defendants testified that residence property in the area which was contiguous to the country club was in greater demand and brought a higher price than property of the area not so situated. Coupled with this, both of defendants' witnesses testified that the shrinkage of the 300-foot residence lot by one half would render the remainder less desirable as a residence and decrease the possibilities of its sale. Even under less drastic conditions resulting from the condemnation of farm lands, the shrinkage of remaining land has been held to be a proper element of damages. (Illinois Power and Light Corp. v. Barnett, 338 Ill. 499; Central Illinois Public Service Co. v. Lee, 409 Ill. 19.) From the evidence, therefore, it is our conclusion that defendants will suffer a disturbance in the rights attending the ownership of their property, and that such injury was immediate and real rather than remote and speculative.
Singularly applicable here are the following observations found in City of Chicago v. Lord, 276 Ill. 544, at 549-550: "In cases of condemnation of private property for public use a wide variety of circumstances must be taken into consideration, which would be different in every individual case. The owner of property is entitled to compensation for the property actually taken and of which such owner is deprived, and is also entitled to damages, if any, to property not taken. The measure of damages in condemnation is the fair cash market value of the property taken for its highest and best use, and the difference between the value of the remainder immediately before the filing of the petition and immediately after the completion of the improvement. * * * In some cases but a small portion of the property will be taken, and that in such a way that the remainder of the property will be fully as valuable as it was before the taking. In other cases a portion of the property may be taken in such a way as to *448 leave the portion not taken of no value, or of such little value that the condemnation will, in effect, amount to a taking of the whole. Between these extremes there might be an infinite variety of cases, each of which would depend upon the facts and circumstances of the particular case, * * *." (See also: City of Chicago v. Callender, 396 Ill. 371; City of Chicago v. Jackson, 333 Ill. 345.) Again, it was stated in City of Chicago v. Provus, 415 Ill. 618, 621: "It has long been established by this court that the measure of compensation for land taken by eminent domain is the fair cash market value for the highest and best use to which it is available and the decrease, if any, in the fair cash market value of the part not taken."
The circumstances peculiar to the instant case are that the size of defendants' residence lot will be reduced by approximately one half and that it will be deprived of the advantages which attached to its contiguity with adjoining property. Both circumstances, according to defendants' witnesses, do damage to the remainder in that they decrease its possibility of sale and reduce its fair cash market value. Accordingly, it is our view that the court below was in error when it denied the defendants' cross petition and struck the evidence by which they sought to sustain it.
For the reasons stated the judgment of the circuit court of Ogle County is affirmed insofar as it awarded defendants $4,000 as compensation for the land taken, but is reversed insofar as it denied defendants' cross petition for damages to land not taken. As a consequence the cause is remanded to the said circuit court with directions to reconsider defendants' cross petition in the light of the stricken evidence and such proofs as may be offered by the plaintiffs.
Affirmed in part and reversed in part and remanded, with directions.