375 S.E.2d 564

### WEST VIRGINIA DEPARTMENT OF HIGHWAYS

v.

**Aaron WOODS, et al.; Red Dawson Construction Company; William A. Dawson and Carol W. Dawson, his wife.**

No. 17515.

Supreme Court of Appeals of West Virginia.

Nov. 21, 1988.

Joseph G. Martorella, Huntington, for W.V. Dept. of Highways.

Marshall & St. Clair, Huntington, for Aaron Wood.

PER CURIAM:

This appeal involves three eminent domain proceedings consolidated for trial. Having reviewed the record, the petition for appeal and the briefs of the parties, we affirm the final order of the Circuit Court of Cabell County (the "trial court").

I

The appellant, the West Virginia Department of Highways, instituted these eminent domain proceedings to obtain the title to several parcels of vacant land totalling 10.362 acres in Cabell County, owned by W.A. "Red" Dawson and Carol W. Dawson, his wife, the appellees. The subject property lies on State Route 152 at 5th Street, near the City of Huntington. Much of the property was "hillside farmland" at the time the appellees purchased it. Appellee "Red" Dawson, a sewer contractor and excavator, commenced acquisition of the property in 1980.[1] Mr. Dawson removed some of the hillside to fill a large, thirty-foot-deep hollow in order to create level land. The value of this excavation was estimated to be about $100,000. In addition, a creek was rerouted, a catch basin was installed and a concrete pipe was installed under the driveway which "Red" Dawson constructed. All of this leveling work was done in order to create a parking

---

1. The land sales contract and most of the deeds were not recorded until various dates in 1982 and early 1983, primarily because of delays in obtaining surveys.

lot for "Red" Dawson's idle construction equipment. "Red" Dawson valued the property on the date of take, July 15, 1983, at $90,000 an acre, for a total value of about $932,000.[2]

Four expert witnesses, two appraisers for the appellant and two appraisers for the appellees, testified as to the fair market value of the subject property on the date of take. All four of these witnesses used the comparable sales method of determining such value. These witnesses all utilized recent sales of unimproved acreage near interstate interchanges in Cabell County. The appellant's witnesses, unlike the appellees' witnesses, assigned distinctive per-acre values to different portions of the subject property depending upon the terrain, that is, the more level, road-grade portions were valued greater than the more mountainous portions of the subject property. The appellant's witnesses arrived at total values of $363,000 and $319,600, respectively. The appellees' witnesses arrived at total values of $860,000 and $881,-000, respectively.

After a view of the property in question the jury determined that $500,000 was "just compensation" to the appellees.[3]

During the trial the appellant attempted to cross-examine one of the landowners, "Red" Dawson, about the prices which he had paid to acquire the various tracts in question. The trial court, over the appellant's objection and exception, sustained the appellees' objection and refused to admit any evidence of the purchase price of the land. The trial court found from the photographic and testimonial evidence in the case that there had been a substantial leveling of the subject property after acquisition by the appellees, so that the appel-

lees' purchase price did not accurately reflect the land's value on the date of take.[4]

The trial court also found that there had been substantial economic changes in the vicinity since the appellees acquired the subject property. Nearby property had recently been developed, with office buildings, a warehouse, a retail store and a restaurant having been erected nearby after the appellees had purchased the subject property.

Because of these substantial physical and economic changes after acquisition, the trial court informed the jury that the prices paid by the appellees to purchase the various tracts in question would not be disclosed to the jury, but that the jury was not to draw any inference from this nondisclosure. Instead, the jury was to consider only the primary question in the case, specifically, the determination of the fair market value of the condemned property on the date of take.

Also during the trial the appellant attempted to cross-examine "Red" Dawson, one of the landowners, about the prices which he had paid to acquire two allegedly comparable properties form Messrs. Lycans and Pulley, respectively. The trial court, over the appellant's objection and exception, sustained the appellees' objection and refused to admit any evidence of the purchase prices paid by the appellees for these two allegedly comparable properties. The trial court found from the topographical maps in evidence that these allegedly comparable properties were clearly not comparable to the subject property because they were not adjacent to the highway (State Route 152), but, instead, were essentially landlocked or much less accessible tracts on the top of the mountain.

2. The appellees asserted no claim for damages to the residue of their property.

3. "Private property shall not be taken or damaged for public use, without just compensation[.]" *W.Va. Const.* art. III, § 9.

4. One of the appellees' witnesses, Mr. Bill Jones, testified that he had observed the subject property in a casual manner many times over the years while driving by it on State Route 152. On the other hand, he testified that he had made an analytical view of the property for the purpose of appraisal only once, and that was after the date of take. The record does not support the appellant's contention that this witness recognized there was no substantial leveling of the property. In fact, this witness referred to the removal of trees and brush during "the construction period." The "construction" was the substantial leveling of the property, as no buildings were erected thereon.

Over the appellant's objection and exception, the trial court entered judgment upon the jury verdict and denied the appellant's motion for a new trial for excessive damages, or, in the alternative, for remittitur.

## II

■ The appellant assigns as error the trial court's ruling that evidence of the purchase price paid by the landowners in this case was not admissible to assist in the determination of the fair market value of the condemned land on the date of take. On this record we believe this assignment of error is without merit.

It is within the sound discretion of the trial court as to whether the purchase price paid by the owner of the condemned property should be admitted into evidence. *West Virginia Department of Highways v. Mountain Inc.*, 167 W.Va. 202, 204, 279 S.E.2d 192, 194 (1981). Guiding this discretion are certain principles. For example, the purchase price of the condemned property is not admissible when it has no probative value to the jury because there have been such substantial economic or physical changes affecting the property that the original purchase price is no longer a reflection of the fair market value of the condemned property. *Id.* 167 W.Va. at 206, 279 S.E.2d at 195. The sole syllabus point of *Mountain* states this concept in this manner:

In an eminent domain proceeding to take private property for public use the purchase price of the property ... is not admissible when there has been [a] showing that a substantial change in the physical characteristics of the property has occurred since the sale took place and the original purchase price is not probative of the fair market value of the property at the time of the taking.

The present case is also similar to *Department of Transportation v. Prairie Travler, Inc.*, 52 Ill.App.3d 799, 10 Ill.Dec.

658, 368 N.E.2d 144 (1977), wherein the court held that the trial court's refusal to admit evidence of the purchase price of the condemned property was not an abuse of discretion because there was evidence of a substantial increase in recent property valuations in the vicinity and because the jury award was within the range of testimony of expert appraisers. *Id.* at 803–04, 10 Ill.Dec. at 662, 368 N.E.2d at 148. Such are the circumstances here, too. Accordingly, we hold that the trial court did not abuse its discretion in the present case in refusing to admit evidence of the purchase price of the condemned property.[5]

## III

■ The only other assignment of error is that the trial court erred in refusing to admit evidence of the allegedly two comparable sales to the appellees by Messrs. Lycans and Pulley, respectively. We disagree.

In syllabus point 1 of *W. Va. Department of Highways v. Brumfield*, 170 W.Va. 677, 295 S.E.2d 917 (1982), this Court set forth the test for admissibility of evidence on allegedly comparable sales in condemnation cases:

The general rule is that evidence of the price paid for property which is comparable to the property being condemned is admissible, if the following conditions are satisfied:

(a) The sale must be bona fide;

(b) The sale must be voluntary, not forced;

(c) The sale must have occurred relevantly in point of time; and

(d) The sale must cover property which is comparable to the property being condemned.

With respect to factor (d), the court in *Edwards v. State Highway Commissioner*, 205 Va. 734, 738, 139 S.E.2d 845, 848 (1965), held that mere proximity to the condemned land is not the test. Instead, the

---

5. As in *West Virginia Department of Highways v. Mountain Inc.*, 167 W.Va. 202, 206, 279 S.E.2d 192, 195 (1981), this Court in the present case also believes that the purchase of the subject property was not so remote in time from the

condemnation proceedings as to render evidence of the purchase price inadmissible for that reason; however, this lack of remoteness is not determinative of the admissibility of the purchase price of the condemned land.

allegedly comparable property must be similar in character, availability and marketability to that of the condemned property.

Here the trial court found that the allegedly two comparable properties were not comparable to the subject property because they were not adjacent to the highway and were located on top of the mountain. The disparity in accessibility is so extreme that the trial court did not abuse its discretion in holding that evidence of the sale prices of these properties was not admissible to assist in the determination of the fair market value of the subject property.

For the reasons stated in this opinion, the final order of the trial court is affirmed.

AFFIRMED.